**John C. BATES, Appellant,**

v.

**Oris AARON et al., Appellees.**

Court of Appeals of Kentucky.

June 20, 1958.

Rehearing Denied Nov. 28, 1958.

Robert Hubbard, Harold Huddleston, Elizabethtown, Ed P. Jackson, James W. Stites, Stites, Wood, Helm & Peabody, Jack W. Womack, Louisville, for appellant.

L. A. Faurest, Jr., James Turner Hatcher, Elizabethtown, for appellees.

CAMMACK, Judge.

This action was instituted by the appellant, Dr. John C. Bates, against the appellees, Drs. Oris and Louis Aaron, to recover $10,800 alleged to be due and owing him under a partnership contract and to secure an injunction restraining the appellees from engaging in numerous named activities. The appellees answered, denying that Dr. Bates was a partner in their clinic, and sought an injunction prohibiting Dr. Bates from engaging in the practice of medicine within 30 miles of Elizabethtown. Various amendments to the pleadings were filed.

The issues as finally presented for decision were (1) whether the appellant was entitled to $7,700 under a contract of employment with the appellees and (2) whether the appellees were entitled to an injunction under the following provision in the employment contract:

"If any member withdraws from the group, for any reason whatsoever, he agrees not to practice, or open an office within 30 miles of the group or Clinic at Elizabethtown, Kentucky."

This appeal is from a judgment, declared to be final, which granted the injunction sought by the appellees. The question of damages was expressly reserved for further orders of the trial court.

Dr. Bates, the appellant, contends that reversal should be granted because (1) he was not a member of the clinic and (2) he did not "withdraw." We believe the appellant's contentions are well grounded.

In November 1955, the appellant entered into an employment contract with the appellees, owners and operators of the Elizabethtown Clinic. The contract contained an option provision under which the appellant could purchase a share in and become a member of the clinic. The appellant began working at the clinic in January 1956 and continued there until January 1957. He never exercised his option to purchase a share in the clinic.

In December 1956, a dispute arose between the parties over bonus payments. The appellant said he was entitled to some $7,000 more than the appellees were willing to allow him. He consulted an attorney who discussed the matter with the appellees. Thereafter the appellees notified the appellant by letter that in view of the fact that he had employed legal assistance the members assumed he was contemplating withdrawing from the clinic. They advised Dr. Bates that they wanted a clarification of his intent and that effective Monday, January 14, 1957, his use of clinic facilities would be suspended.

On Sunday, January 13th, the appellant's nurse notified him that she had been discharged by the manager of the clinic. Dr. Bates went to the clinic Monday morning and secured the aid of other clinic nurses, but they soon informed him that they had been told not to assist him. The X-ray and laboratory technicians also refused to assist him. Thereafter the appellant ceased work-

ing at the clinic and began his own practice in Elizabethtown.

The appellees argue that the word "member" as used in the restrictive practice provision of the contract was understood by the parties to mean and include "any doctor employed by the group," and that withdrawal "for any reason whatsoever" included involuntary dismissal. These interpretations and constructions we are not disposed to accept. Elsewhere in the contract the word "member" obviously is restricted to shareholders in the clinic. The very next provision after the one restricting practice provides:

"If any member withdraws from the group, the group shall have the option to purchase from the withdrawing member his share of the common equipment, less depreciation."

The contract next provides for purchase of a share by the appellant. His option provision immediately precedes this section:

"If John Bates, M. D. leaves the clinic group the latter shall have the option of buying back his share less standard rate of depreciation."

We think the contract as a whole shows that the phrase "If any member withdraws from the group" was not intended to include Dr. Bates in connection with the question of repurchase of shares in the clinic. We find no basis for an interpretation of the contract which would include him, under the facts before us, in connection with the question of restrictive practice. Furthermore, the phrase "withdraws for any reason whatsoever" connotes a disassociation by an act of the withdrawer and cannot be construed to include involuntary dismissal, in the absence of an express intent to do so. Some redefining of words and phrases would be necessary to support the contentions of the Drs. Aaron.

The case of Bradford v. Billington, Ky., 299 S.W.2d 601, relied on by the appellees, involved the dissolution of a partnership contract between two doctors in Paducah.

The contract provided that Bradford, the incoming doctor, would not practice in Paducah or McCracken County for six years if the partnership was *terminated* "for any cause." Either party could dissolve the partnership after 120 days' notice. After the partnership had been in operation about a year and a half Billington, the local doctor, notified Dr. Bradford that he desired to dissolve the partnership. Dr. Bradford moved to new offices and began his own practice. We upheld the restrictive provisions of the contract, saying that the context of the words "for any cause" meant "without regard to cause." But the provisions of that contract were entirely different from those in the case at bar. There, we were construing the instrument as written, while here we are asked to redefine words and phrases, to say nothing of the one year "trial period" for Dr. Bates. See also Owen v. Staib, Ky., 307 S.W.2d 758.

For the reasons stated the judgment is reversed and the case remanded for the entry of a judgment consistent with this opinion.